# VANDERKEMP and another *vs.* SHELTON and others.

An assignee of a junior mortgage assigns such mortgage to a third person, with a covenant of guarantee as to the collection. A senior mortgage upon the same premises is afterwards foreclosed in Chancery, and a sale ordered. Upon the sale the assignee, who assigned with covenant of guarantee, becomes the purchaser. The subsequent assignee of the junior mortgage, afterwards files a bill to foreclose his junior mortgage.—Held that the land was liable to the payment of such junior mortgage, inasmuch as the assignor, with guarantee, had become the purchaser and his guarantee enured for the benefit of the junior mortgagee.

And all the assignments of the mortgage having been recorded, subsequent purchasers or owners of subsequent equities take them subject to the rights of the assignees.

The recording act makes the record of an assignment of a mortgage notice to subsequent purchasers or subsequent incumbrancers, and such subsequent purchasers must hold subject to such notice.

Where in an assignment of a mortgage, there is a covenant guaranteeing the *collection*, the covenantee must first proceed against the obligors in the bond next against the land and lastly against the covenantor, and if the covenantor is the owner of the land, and the bill is filed by the assignee before suit brought upon the bond, proceedings will be suspended until the fruits of a suit upon the bond can be known, inasmuch as under the New-York Statute full justice cannot be done to the parties by a single decree upon such foreclosure.

A mortgage was executed by Shelton and Smith, Oct. 13, 1835, to Mahlon Kingman, to secure the payment of $5,220, in ten equal annual installments. The mortgage was for the purchase money of the mortgaged premises, and a bond for the payment of such money accompanied the mortgage. The mortgage was duly recorded Dec. 1835. Kingman assigned the bond and mortgage to Augustus C. Ste-

vens, Dec. 19, 1835, which assignment was duly recorded Dec. 21, 1835, on the 29th Feb. 1836, Augustus C. Stevens executed to David E. Evans, an assignment of the same bond and mortgage in the following words, " for a valuable consideration, I " do hereby transfer and assign the within mort" gage and the bond, accompanying the same, to " David E. Evans Esq, his heirs, representatives and " assigns for ever, and all moneys to be due thereon ; " and I hereby authorise him or them, at his or their " own proper costs and expense, to take all lawful " ways and means for the collection thereof, and to " discharge said mortgage when paid, and I also " hereby guarantee the collection of the same to " said David E. Evans, his heirs representatives and " assigns as the same become due and payable ac" cording to the conditions contained therein." Which assignment was recorded May, 14, 1836. David E. Evans assigned the said bond and mortgage to the complainants, Aug. 11, 1837, which was duly recorded Aug. 15, 1837. Upon the mortgage there were two installments due at the time of filing this bill.

One Joseph D. Hoyt, conveyed the mortgaged premises to Mahlon Kingman and David Welty, by deed dated Oct. 13, 1835, recorded Nov. 3, 1835. Kingman and Welty to secure the purchase money, executed a mortgage to Hoyt, dated Oct. 13, 1835, and recorded Nov. 3, 1835. Hoyt instituted a suit in this court to foreclose said mortgage, in which neither A. C. Stevens nor David E. Evans, or the complainants in this suit, were made parties defendant. A decree of foreclosure was obtained Nov. 20, 1837. Notice of *lis pendens* was filed in such suit Nov. 2, 1836. The premises were sold under

the decree, by a master, Feb. 12, 1838, to Augustus C. Stevens, which deed was recorded March 31, 1838. May 5, 1838, A. C. Stevens executed a mortgage upon the same premises to Phllip P. Kissam for $8,000 ; and Dec. 26, 1838, another mortgage to Sherman Stevens, president of the Merchants Exchange Bank, (a bank organised under the general banking law,) for $2,000. The mortgage for $8,000 was also assigned to S. Stevens, president, as aforesaid, for the amount of both which mortgages, viz : $10,000, A. C. Stevens holds certificates of stock in said bank. The bill in this cause is filed to foreclose the junior mortgage, executed to Kingman, and claiming that A. C. Stevens, by his purchase at the master's sale, subjected the premises to be sold for such junior mortgage.

*E. Norton,* for Complainants.

*E. Fitch Smith,* for defendants.

THE VICE CHANCELLOR. It will be perceived from the above statement of facts that the notice of *lis pendens* upon the foreclosure of the mortgage to Hoyt was filed after the assignment and record of assignment of the second mortgage, from A. C. Stevens to D. E. Evans, but before the assignment from Evans to the complainants. The assignment from Evans to the complainants was, however, executed and recorded before the decree of sale upon the foreclosure of the mortgage to Hoyt, and of course before the deed to A. C. Stevens under that foreclosure or the vesting of any of the subsequent rights under the same. The principal question to be determined in this case is, the legal effect of the

assignment of the second mortgage, by A. C. Stevens to David E. Evans, coupled with Stevens covenant, and also the legal effect of the purchase by A. C. Stevens of the mortgaged premises under the foreclosure of the prior mortgage. Strip the case of the circumstances of the subsequent mortgages by A. C. Stevens to Kissam and Sherman Stevens as president, and suppose that A. C. Stevens is still owner of the fee of the mortgaged premises without the interest of any third person intervening : how then will the case stand ? and what will be the rights of David E. Evans ? I say of Evans, to simplify the case, and because the complainants stand precisely in Evans' shoes. Here then will be a case of a purchase of a bond and mortgage by A. C. Stevens—of the assignment of it by him to David E. Evans, with guarantee as to its collection—and of a subsequent purchase of the mortgaged premises by A. C. Stevens under a prior lien. In such case, A. C. Stevens would have the entire fee. Evans proceeds to foreclose his junior mortgage assigned to him by A. C. Stevens, and finds no one but this same Stevens has an interest in the mortgaged premises. If Evans had been the grantee of the land from Stevens with covenant of warranty, the title which had been subsequently acquired by Stevens would have enured to the benefit of Evans, and Stevens could not have set up such subsequently acquired title against the title of Evans. There can be no different rule applicable to the interest in land acquired by the assignment of the mortgage, if the covenant in the assignment was of sufficient scope to draw after it this legal consequence. This leads us to examine the character and scope of the covenant connected with the

assignment in this case. It is simply a covenant guaranteeing the *collection* of the debt secured by the mortgage. The covenantor is not liable upon this covenant, until the covenantee has prosecuted the principal and exhausted the other remedies conferred upon him by the act of assignment. These remedies are, a resort to the personal obligation contained in the bond of the original mortgagors, and to the land mortgaged by them. If the remedies upon both these fail, the covenantor is liable to the covenantee for the deficiency. In other words, Evans, in this case, to sustain a suit at law against A. C. Stevens, must show that he endeavored to collect the amount of the debt from the obligors upon the bond and from the property mortgaged, before he can maintain an action against the assignor or covenantor upon his covenant. The force and effect of the covenant in this case, then, is if the covenantee cannot collect the debt of the obligors upon their bond, or by the sale of the land mortgaged upon the mortgage, the covenantor will pay the deficiency. In the case of a bond for a debt, with a mortgage to secure its payment, it has been held and is true, that the bond or debt is the principal—the mortgage a mere incident. An assignment of the debt as the principal thing, carries with it its incident, the mortgage; an assignment of the incident (the mortgage), does not carry with it the principal, the debt or the bond.

(Wilson vs. Troup, 2 Cowen's Rep. 195.) In this case the bond and mortgage were both specifically assigned. And though the mortgage is an incident, it is an interest in real estate which is security for the debt, and as such the asssignee has an interest in it which must be governed by the rules

which control interests in real estate. Here, too, though the covenantee may prosecute his remedy upon the bond, yet if he prosecutes his remedy upon the mortgage, he finds the covenantor the owner of the mortgaged premises; and so far as this case is concerned, it would seem that all the covenantor could ask would be, that there should be a previous prosecution upon the bond; and if, in such prosecution, there was a failure to collect the debt, the covenantor could not object to an immediate procedure against himself to collect the money upon the mortgage. If such previous prosecution upon the bond had been had and judgment had been obtained, and satisfaction failed to be received by execution, leaving a deficiency, the covenantor would upon payment be entitled to the benefit of such judgment, and to be subrogated to the rights of the covenantee therein. There has been actually no prosecution in this case instituted upon the bond; and it is another question whether this court will settle and adjust all these claims in this suit, (as it is a favorite principle of courts of equity to prevent multiplicity of litigation,) or whether they will wait and see what fruits are reaped by a prosecution upon the bond, and in the mean time suspend the proceedings in this suit. It is probably in the power of this court so to suspend the proceedings until prosecution is had upon the bond, or to continue them, and in case of payment by the covenantor, to direct that the bond should be assigned to the covenantor to enable him to collect what he could upon it. In either case it would be the same to him, except as to time.

There is, however, another feature in this case which must be taken into consideration, and which

possibly ought to influence the decision of the court.

The mortgage assigned by A. C. Stevens to Evans, was a secured mortgage. It was both received and passed with the legal knowledge on the part of both assignor and assignee, that the mortgaged premises were subject to a prior incumbrance. Under this state of facts, the covenant of the assignor was equivalent to an agreement that the assignee should be able to collect the debt out of the obligation of the mortgagors, or out of the mortgaged premises subject to the prior mortgage. But before the assignee attempts to collect his debt, the mortgaged premises have been conveyed to the assignor under the prior mortgage. This brings us back to the former question, whether the assignor can set up a subsequently acquired title under the prior mortgage, (even though the assignment was made with the knowledge, on the part of the assignee, of the existence of such prior mortgage,) to defeat or postpone the claim of the assignee upon the mortgaged premises. If any other person than the assignor had purchased the premises under the first mortgage sale, there can be no doubt but the assignee, to have reached the mortgaged premises as an available security, must have filed his bill to redeem.

It is insisted by the counsel for the defendants, that the complainant must now file his bill to redeem, as the only mode of availing himself of the security of the mortgaged premises. The effect of this, upon the supposition we have made, would be, that Evans must first pay A. C. Stevens the amount of the prior mortgage, and thus obtain a title to the premises. He must then sell the premises; and if they fail to produce enough to pay the amount advanced by Ev-

Oct. 1840.

Vanderkemp
and others
v.
Shelton and
others.

ans for the redemption and the claim he has by vir- tue of the assigned mortgage, Evans will then have an action against Stevens upon the covenant, for the deficiency. A court of Chancery will hardly send a party this circuitous route to arrive at precisely the same point, in effect, as he would arrive at by the direct route.

The question recurs again here as before, whether Evans shall be permitted to resort to a direct foreclosure until after he has exhausted his remedy against the mortgagors upon the original bond. The plain import of the covenant is, that the assignee shall proceed, in the first place, against the obligors upon the bond and against the property mortgaged. He is here proceeding against the property mortgaged and on the bond at the same time. But as between the obligors and Stevens, the court have hardly power here to do justice. The obligors should pay the whole mortgage debt before Stevens is called upon to pay any thing. But in this suit, no execution can be awarded against the obligors until after a sale of the mortgaged premises, and then only for the deficiency. If the mortgaged premises are sold under a decree in this cause, it would be unjust to Stevens, inasmuch as the property, to wit, the incumbrance of the prior mortgage, purchased by Stevens would be sold to pay a debt which the obligors ought first to pay. Under the rules of proceedings in this court and the statute regulating mortgage sales, it appears to me hardly possible to do justice to all the parties by a single decree in this suit. Under the view I have taken of the matter, the rights and equities of the parties would require a decree to be entered, requiring,

1. The payment of the money by the obligors, and
that execution should be issued to collect the same.

2. Upon return of such execution unsatisfied in whole or in part, the whole mortgaged premises should be sold for such deficiency.

3. If there was any deficiency upon such sale, an execution to issue against A. C. Stevens for such deficiency.

But it is not competent for the court to make such a decree. Under the statute we cannot make a personal decree and execution thereon precede the sale of the mortgaged premises. To do justice, therefore, it will be necessary to suspend the proceedings in this suit, until the complainants shall have prosecuted Shelton and Smith at law upon their bond, and collected what they can upon such judgment.

I have examined this case as one between A. C. Stevens and David E. Evans. I have done it for the reason that the complainants succeed to all Evans' rights, and that the defendants have no other or greater rights than A. C. Stevens. The assignments of the second mortgage, which is the foundation of this suit, were all duly acknowledged and recorded. Such record under the Revised Statutes (1 Vol. p. 762, Sec. 37, 38, old ed.) is notice to Kissam and Sherman Stevens. The equities will then stand as they would have stood between A. C. Stevens and Evans. I have had much doubt in this case, and am not fully satisfied with the conclusions to which I have come. But I have given it an industrious examination, and shall order that the proceedings in this suit be suspended until the complainants prosecute Shelton and Smith at law to judgment and

42

Oct. 1840.

execution upon their bond set forth in this bill. Costs to abide the farther proceedings in this court.